IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN KIZZIAH and<br>MISTY KIZZIAH,<br><br>    Plaintiffs,<br><br>v.<br><br>DON PEACE, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. CV 98-TMP-2085-S<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

This action is before the court on the motion for summary judgment filed April 1, 1999, by defendants Don Peace, Darrell Tino, Quinton Little, Quality Lube, and Jiffy Lube (collectively "defendants"), and on the motion to dismiss defendant Mike Gordon, filed by defendants on February 24, 1999. Plaintiffs Steven Kizziah and Misty Kizziah responded to the motion for summary judgment and filed evidence in support of their opposition on April 28, 1999. Defendants replied on May 5, 1999. Oral argument on the motions was heard by this court on May 13, 1999. All parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c). Having considered all the briefs, evidence, and argument submitted in support of or in opposition to the dispositive motions, the court enters this memorandum opinion.



### I.  Motion to Dismiss

Defendants have moved to dismiss defendant Mike Gordon because he has never been served in this matter and has not entered any appearance. After receipt of the motion, this court entered an order on February 25, 1999, giving plaintiff 15 days in which to show cause why the motion to dismiss should not be granted. Plaintiffs did not respond to the show cause order, and agreed at the hearing on defendants' motion for summary judgment that the motion to dismiss is due to be granted. Consequently, this court finds that defendants' motion to dismiss without prejudice all claims against defendant Mike Gordon is due to be granted.

### II.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving parties have met their burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, they may not merely rest on their pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  Undisputed Facts

The essential facts relevant to the remaining motion for summary judgment are undisputed. Plaintiff Steven Kizziah was hired by defendant Quality Lube in the summer of 1996 as a "pitman" in Quality Lube's Gardendale, Alabama, location. During the next several months, the plaintiff was transferred to other Quality Lube locations, where he performed a variety of duties. Eventually, Kizziah was transferred to the Green Springs location of Quality

Lube in Birmingham, Alabama, where he became the assistant manager, and defendant Quinton Little was the manager.

During his employment as assistant manager, one of plaintiff's duties was to close the store on Saturday evenings and to make the night bank deposits after "closing out" the cash drawer for the weekend.[1] Store policy required the person in charge of the money to hide the money in a location within the store, rather than to keep the money in the cash drawer. The only persons given access to the cash drawer were the manager and the assistant manager.

On two occasions during Kizziah's tenure as assistant manager, money was discovered missing from the cash drawer on Monday morning after Kizziah had "closed out" the cash drawer on a Saturday. The first incident was Saturday, October 6, 1997, when Kizziah worked late at the store, and told Little that he had left approximately $200 in the drawer. Kizziah admits he didn't "hide" the money within the store, but testified that the store policy regarding hiding the money was frequently violated. When Little opened the store on Monday morning, he called Kizziah to ask where the money had been left, and informed him that the money was not in the cash drawer. Little indicated that the disappearance of the money caused him to be suspicious of Kizziah because, aside from Little

---

[1] The store was open on Saturdays, but closed on Sundays.

and Kizziah, only the owner and another senior store manager had keys to the store.

After the money was discovered to be missing, the incident was reported to the Birmingham Police Department. A detective from the Birmingham police asked Kizziah if he would come to the police station to take a polygraph test. Plaintiff's wife, Misty Kizziah, told the detective that her husband would not take the polygraph test because he had been advised by a lawyer to decline. The detective made another request at a later date, and Misty Kizziah again declined on behalf of her husband. According to Kizziah, Little also told Kizziah that Quality Lube would want both Little and Kizziah to take a polygraph, and that Kizziah would be fired if he refused to take the polygraph.[2] Kizziah was later told by Mike Gordon that Quality Lube probably would not fire him for refusing to take the polygraph test, although Little told Kizziah that Quality Lube probably would fire him, _either_ because management believed Kizziah had taken the money _or_ because he refused to take the polygraph test. Kizziah remained employed at Quality Lube throughout the week following the first disappearance of the money.

On the following Saturday, the plaintiff again closed the Green Springs store and made the night deposit. He then counted

---

[2] Defendants dispute making any demand or request for a polygraph test; but, for purposes of this motion, the court assumes that the defendants did make a demand upon plaintiff.

all the money that was to be left for the Monday opening, and hid the money, as he had been instructed to do. When the store opened on Monday, about $60 was missing from the hidden cash. Shortly after the money was discovered to be missing, Little terminated Kizziah's employment. Kizziah does not allege that Little, or any other defendant or agent of any defendant, mentioned the polygraph during the conversation that ended in Kizziah's dismissal.

Kizziah later applied for other jobs, and noted on his applications for employment that he had worked at Quality Lube. He was not hired by any of the prospective employers. He then applied for other positions, and did not disclose his employment at Quality Lube. He then received a job offer.[3]

### III.  Procedural History

Kizziah and his wife filed the complaint commencing this action on July 2, 1998 in the Circuit Court for Jefferson County, Alabama. Plaintiffs allege that: (1) Kizziah was terminated because he refused to take a polygraph test, in violation of the Employee Polygraph Protection Act ("EPPA"); (2) Kizziah was defamed by statements made by the defendants to third parties accusing

---

[3]Kizziah offered his own testimony that his uncle and mother-in-law had told him that they had heard that defendants had told other people that he had stolen the money. Neither Kizziah's uncle nor mother-in-law have offered any evidence themselves. Kizziah's testimony about statements made to his relatives is not based on personal knowledge as required by Rule 56.

Kizziah of theft; and (3) that Misty Kizziah suffered emotional distress as a result of the alleged wrongful termination and defamatory remarks. Defendants timely removed the action to this court based on federal question jurisdiction. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1441(a) and (b), because plaintiffs' claims are premised upon an alleged violation of the EPPA, 29 U.S.C. § 2002(3)(A) and 29 C.F.R. § 801 et seq.

### IV.  Defendants' Motion for Summary Judgment

Defendants have filed a motion for summary judgment, asserting that there exists no genuine issue of any material fact as to any of plaintiffs' claims. More specifically, defendants assert that Kizziah was never told he had to take a polygraph test and that, even if he was told he would have to take a polygraph test, the refusal to take the test was not the reason for his termination. Defendants further contend that Kizziah has not produced any evidence that any defendant made any defamatory statements regarding the plaintiff. Finally, defendants assert that Misty Kizziah's claim for emotional distress[4] is due to be dismissed because there is no basis for such a claim under Alabama law.

---

[4] Defendants construe the complaint to assert a claim for loss of consortium, but plaintiff stated in oral argument, and this court agrees, that the only claim asserted by Misty Kizziah simply seeks recovery for emotional distress.

A. Violation of the EPPA

The EPPA makes it illegal for any employer to request or require an employee to take a polygraph test or to discharge any employee who "refuses, declines or fails" to submit to a polygraph examination. 29 U.S.C. § 2002(1) and (3)(A). However, an exception to the prohibition exists when an employer's request for the polygraph test is made "in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, [or] misappropriation...." 29 U.S.C. § 2006(d). Under this exception, an employer may request that an employee submit to the polygraph test so long as the employee "had access" to the property that is the subject of the investigation and the employer has a "reasonable suspicion" that the employee was involved. 29 U.S.C. § 2006(d)(2) and (3) Consequently, plaintiff first must show that his employer requested that he submit to a polygraph test or that the reason for his termination was his refusal to submit to the polygraph test. Even if plaintiff can offer such evidence, defendants still may be entitled to summary judgment if they offer evidence of an ongoing investigation, access, and a reasonable suspicion.

1. Request For Polygraph Test

To sustain a claim that the defendants violated the EPPA, plaintiffs first must show that the defendants requested that Kizziah submit to a polygraph test. Although defendants deny that such a request was made, Kizziah's testimony is sufficient to create a fact question as to whether the request was made.

2. Reason For the Discharge

To survive summary judgment, Kizziah also may demonstrate that his refusal to take a polygraph test was the reason for his discharge. Nothing supports this assertion except Kizziah's own conclusory and speculative testimony. Kizziah does not dispute that, after he was allegedly told to take the test and refused to on Tuesday, he remained employed with Quality Lube until the next week. He was not terminated until the following Monday, when money was missing for the second time after Kizziah had "closed out" on a Saturday night. Kizziah does not specifically testify that he was told he would be fired if he refused to take the polygraph, but simply that the owner was "going to have a polygraph done" as part of the investigation into the missing money, and that he understood that he "would have to" submit to a test.

Kizziah, in applying for Unemployment Compensation from the State of Alabama, responded under oath that the reason he was

discharged was for "theft of company funds." Kizziah further stated that after the money was found to be missing, Little stated "that he had to terminate me because I was the manager on duty and he was holding me responsible." During the conversation in which Kizziah was terminated, he has no recollection of the mention of the polygraph test. To the contrary, Kizziah testified that he was told that he was being terminated because of the missing money. Consequently, Kizziah has failed to offer any evidence that the reason for the discharge was his refusal to submit to a polygraph test, and his claim is, therefore, due to be dismissed.

    2.   Ongoing Investigation Exemption

Even though Kizziah has offered evidence that the defendants requested that he take a polygraph exam, summary judgment in favor of the defendants still is appropriate because the defendants have shown that their conduct fits into the statutory exemption set forth in 29 U.S.C. § 2006, which states:

> **Limited exemption for ongoing investigations.** Subject to sections 2007 and 2009 of this title, this Chapter shall not prohibit an employer from requesting an employee to submit to a polygraph test if -
>
> (1) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage;
>
> (2) the employee had access to the property that is the subject of the investigation;

> (3) the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation...

Id.[5]

Defendants have shown, through Kizziah's own testimony and the testimony of various defendants, that there was an ongoing investigation into the theft. It is undisputed that the defendants contacted the police and the police contacted Kizziah. Furthermore, Kizziah's own testimony demonstrates the applicability of the exemption:

> Q. Then you say that Quinton told you at 2:00 or 3:00 p.m. on October 7th, I guess, 1997 that you were going to have to take a polygraph?
>
> A. Yes. He said that's the only way they can find out who was guilty of taking it, and whoever was guilty, that's who they were going to prosecute.

Kizziah's testimony not only supports the contention that Quality Lube had an ongoing investigation, but also shows that Kizziah had access to the funds. Kizziah does not dispute that he not only had access to the money that was missing, but that he was the last person to handle the money before the store closed on the Saturday nights before the money was discovered to be missing. The fact of the access may alone be sufficient to give the employer the

---

[5] The Act also provides an additional subsection (4), but that subsection applies only in instances where the employee submits to the test and, therefore, is not relevant to this action.

"reasonable suspicion" required by subsection 3; however, defendants have offered further evidence that supports a reasonable suspicion. Defendants have testified that there were several incidents when Kizziah worked at the Pelham Quality Lube location when money was discovered missing after Kizziah's shift. In those instances, Kizziah replaced the missing money from his own funds after being confronted with the discrepancy in the account. Certainly, the totality of the circumstances surrounding the missing money was sufficient to give the employer a reasonable suspicion that Kizziah was involved in the theft.

For all of these reasons, even assuming the employer requested that Kizziah take a polygraph test, that conduct was not a violation of the EPPA because the request was allowed pursuant to the exemption for ongoing investigations set forth in 29 U.S.C. § 2006(d). Consequently, defendant's motion for summary judgment on the EPPA claim is due to be granted.

### B. Defamation

Plaintiff asserts that his applications for employment were rejected by some employers because Quality Lube defamed him by telling the prospective employers that he had stolen money from them. Plaintiff offers nothing but speculation to support this claim, surmising that, because the employers to whom he revealed his employment with Quality Lube did not hire him, they must have

heard a defamatory remark from Quality Lube. More specifically, Kizziah testified that his mother-in-law heard from his father-in-law that the father-in-law's employer had received a bad employment reference from Quality Lube. Plaintiff also alleges that Little told Kizziah's uncle that Kizziah had been fired for stealing money. Again, plaintiff offers no evidence that such remarks were made, other than plaintiff's own second- or third-hand knowledge.

A fundamental element of a claim for defamation under Alabama law is that a defamatory statement was published, or communicated, to a third party. <u>Drill Parts and Service Co. v. Joy Mfg. Co.</u>, 619 So. 2d 1280, 1289 (Ala. 1993). Like any other claim against which a properly supported motion for summary judgment has been offered, the plaintiff must offer evidence beyond the pleadings to support each element. Fed. R. Civ. P. 56(e). In this case, because plaintiff has failed to offer any evidence based on personal knowledge that any defamatory statement was made, defendants' motion for summary judgment on the defamation claim is due to be granted.

### C. Emotional Distress

Plaintiff Misty Kizziah seeks to recover damages based on mental anguish she allegedly suffered after the termination of her husband and the alleged "false publications" of the defendants. Misty Kizziah does not allege that any defendant defamed her, and

clearly she has no claim pursuant to the EPPA. Her complaint is simply that she suffered emotional distress as a result of the alleged wrongs done to her husband. Under Alabama law, there can be no recovery for emotional distress for injury done to another. <u>See</u>, <u>e.g.</u>, <u>Slovenksy v. Birmingham News Co., Inc.</u>, 358 So. 3d 474 (Ala. Civ. App. 1978). Consequently, the defendants are entitled to summary judgment against Misty Kizziah.

### IV. Conclusion

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that defendants' motion for summary judgment against plaintiffs is due to be GRANTED and plaintiff's claims are due to be DISMISSED with prejudice.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 24th day of May, 1999.

*[signature]*

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE